United States District Court0
Middle District of Florida
Jacksonville Division

**ROBERT C. HOVEY,**

**Plaintiff,**

**v.** **NO. 3:22-CV-970-WWB-LLL**

**TRACPATCH HEALTH INC.**
**F/K/A CONSENSUS ORTHOPEDICS INC.**
**F/K/A HAYES MEDICAL,**

**Defendant.**

---

**Order**

Before the Court is plaintiff Robert Hovey's Motion for Final Default as to Tracpatch Health, Inc, doc. 89. Plaintiff initiated this action in September 2022 against defendant, Tracpatch Health, Inc., and now seeks the entry of a default judgment under Federal Rule of Civil Procedure 55. Doc. 89. The Court has reviewed the motion, operative complaint, and other relevant documents on the record. For the reasons discussed below, plaintiff's motion is denied without prejudice.

**Background**

In September 2022, plaintiff filed a complaint against Tracpatch, Inc. (Tracpatch) alleging that he suffered damages from the implantation and failure of Tracpatch's hip replacement system, the Consensus Hip System (CHS). Doc. 1.

Plaintiff brought four claims of strict liability failure to warn, strict liability design and manufacturing defect, negligence, and breach of warranty. *Id.* Hovey alleges that the CHS, was designed, researched, developed, sold and serviced, by the defendants, including Tracpatch. Doc. 45 ¶¶ 1, 24. Hovey further alleges that the CHS was defective and unreasonably dangerous because it is prone to corrosion which causes the release of toxic heavy metals or debris into a patient's body. *Id.* ¶¶ 4-6. Due to the deficiency, Hovey claims that he suffered extensive injuries. *Id.* ¶ 10.

In November 2010, Hovey underwent a right total hip arthroplasty using the CHS. *Id.* ¶¶ 46-48. About 10 years later, he experienced excruciating pain in the right hip and was transported to the hospital where doctors realized the CHS had fallen apart in his body. *Id.* ¶¶ 52-57. This was the first notice to Hovey that the CHS had failed. *Id.* ¶ 58. A few days later, the CHS was completely removed from Hovey's body and another product was implanted. *Id.* ¶ 61. He alleges that due to the defects in the CHS, his hip continues to be weakened and prone to dislocations, which has occurred at least once in March 2022 since the replacement. *Id.* ¶¶ 66-67.

In September 2022, Hovey filed a complaint against Tracpatch[1] for strict liability, negligence, and breach of warranty. Doc. 1. Tracpatch answered, denying all claims. Doc. 10. After answering, two sets of Tracpatch counsel moved to withdraw from the case, docs. 24, 34, which were each granted, docs. 25, 35. Tracpatch was

[1] Tracpatch began as Hayes Medical, which was renamed to Consensus Orthopedics Inc., and then rebranded again as Tracpatch Health, Inc. *Id.* ¶¶ 16-18.

ordered to obtain replacement counsel, doc. 35, which it failed to do. The Court then ordered Tracpatch to show cause as to why a default should not be entered. Doc. 54. The Court warned Tracpatch that failure to timely respond, through counsel of record, would result in entry of a clerk's default without further notice. *Id*. Tracpatch failed to respond and therefore the Court ordered, and the clerk entered, a clerk's default against Tracpatch. Docs. 58, 59.

In December 2023, plaintiff amended his complaint to add in two new defendants, Shalby Advanced Technologies (Shalby) and Granger Health (Granger), doc. 45, which are successor corporations to Tracpatch.[2] Hovey's claims against Shalby and Granger were dismissed through separate stipulations. *See* docs. 53, 71, 81, 82. Shalby asserted a crossclaim against Tracpatch through an amended answer in August 2024. Doc. 74. Hovey moved for default judgment on January 16, 2025. Doc. 89. Shalby moved for entry of a clerk's default on January 14, 2025, doc. 87, and the default was entered by the Clerk on January 21, 2025, doc. 90. Shalby then moved for default judgment, which was denied without prejudice; and the Clerk's default for Shalby's crossclaim was set aside. Docs. 90, 95 102. Shalby was directed to properly serve Tracpatch with their crossclaim under Fed. R. Civ. P. 4 and file proof of service once completed. *Id.* at 2. Shalby's crossclaim is still pending, but no motion is currently before the Court as Shalby works to properly serve Tracpatch with its crossclaim. The

[2] In 2021, Tracpatch became Shalby, which was then sold to Granger in 2023. *Id.* ¶¶ 19-20.

Court has vacated the Amended Case Management and Scheduling Order and a status is set for August 12, 2025. Doc. 104.

**Authority**

An entry of default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure. Rule 55(a) permits a default when a party "has failed to plead or *otherwise defend*" a lawsuit. Fed. R. Civ. P. 55(a) (emphasis added). Before granting a default judgment, however, a court must confirm it has jurisdiction over the claims, including that the complaint states a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), (2); *Univ. of S. Ala. v. Am. Tobacco, Co.*, 168 F.3d 405, 410 (11th Cir. 1999). Well-pleaded allegations of fact are admitted by default. *Cotton v. Mass. Mut. Life Ins. Co.,* 402 F.3d 1267, 1278 (11th Cir. 2005). But if a plaintiff's complaint fails to state a claim, a default judgment cannot stand. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997).

A court must also ensure adequate service of process because a court lacks jurisdiction over a defendant who is not properly served. *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990). A court has the discretion under Rule 55 to hold an evidentiary hearing to determine appropriate damages, but it is not required to, particularly where there is sufficient evidence on the record. *Tara Prods., Inc. v. Hollywood Gadgets*, Inc, 449 F. App'x 908, 911-12 (11th Cir. 2011).[3]

[3] The Court acknowledges and considers that "[u]npublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) (citation omitted).

**Analysis**

As noted above, this case is in an unusual posture. Tracpatch initially appeared through counsel and filed an answer to the complaint. Doc. 10. Although Tracpatch engaged in limited discovery, its counsel withdrew in September 2023. Doc. 35. Since that time, it has neither retained counsel, nor otherwise appeared to defend this lawsuit, in violation of the Federal Rules of Civil Procedure and this Court's orders. Docs. 35, 54, 58.

"A court may impose sanctions for litigation misconduct under its inherent power. The court's inherent power derives from the court's need 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.' This power, however, 'must be exercised with restraint and discretion.'" *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) and *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)) (internal citations omitted). The Federal Rules of Civil Procedure authorize courts to impose sanctions for failure to comply with a court order. *See* Fed. R. Civ. P. 16(f), 37(b)(2), 41(b); and *see also Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1521 (11th Cir. 1996) (stating "[d]istrict courts have broad discretion under the Federal Rules of Civil Procedure to impose sanctions for failure to comply with court orders"). The Court's inherent power to sanction includes the entry of a default judgment. *Boswell v. Gumbaytay*, No. 2:07-CV-135-WKW, 2009 WL 1515912 at *2 (M.D. Ala. June 1, 2009).

Although entering a default judgment against them is considered a drastic remedy, it is appropriate "when a defendant willfully and in bad faith disregards a court order and the court finds that a lesser sanction would not suffice." *Boswell*, 2009 WL 1515912 at *2; *see also Cox v. American Cast Iron Pipe Co.* 784 F.2d 1546, 1556 (11th Cir. 1986) ("the decision to enter default judgment[] ought to be a last resort-ordered only if noncompliance with [] orders is due to willful or bad faith disregard for those orders"). "When a litigant has been given ample opportunity to comply with court orders but fails to effect any compliance, the result may be deemed willful." *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 952 (11th Cir. 1996). Further, "a finding of bad faith is typically only established by showing that the party engages in . . . delaying or disrupting the litigation or hampering enforcement of a court order." *Hymowitz v. Supreme Lending*, No. 1:20-CV-3763-WMR, 2021 WL 2585605 at *2 (N.D. Ga. Mar. 26, 2021) (quoting *Arugu v. City of Plantation*, 440 F. App'x 843, 846 (11th Cir. 2011)).

Here, the Court finds defendant's non-compliance to be willful and in bad faith. The Court has given Tracpatch numerous opportunities to defend against plaintiff's suit. The Court directed Tracpatch to obtain counsel and have them appear on the record after their second attorneys withdrew. Doc. 35. The defendant ignored the Court's direction, and the Court entered an Order to Show Cause to which defendant failed to respond. Doc. 54. The Court warned Tracpatch that failure to show cause would result in the entry of a clerk's default without further notice. *Id.* As Tracpatch failed to comply, the Court entered a Clerk's default in favor of Hovey on March 29,

2024. Doc. 58. Defendant's non-compliance and lack of participation in the case has delayed the resolution of the matter and disrupted the plaintiff's ability to achieve expeditious disposition of his case. Tracpatch has been given ample time and multiple opportunities to comply with the Court's orders and defend this lawsuit; yet it has chosen not to do so. Thus, default is appropriate here, if the Court can properly exercise jurisdiction over the case and the well-pleaded allegations of fact from the complaint support the plaintiff's claims.

A. This Court has jurisdiction over this action.

When considering whether a default is appropriate, the Court considers whether it can properly exercise jurisdiction over the action. Under 28 U.S.C. § 1332(a)(1), federal district courts have original jurisdiction over civil suits between citizens of different states if the amount in controversy exceeds $75,000. A corporation is a citizen of the state it was incorporated in and of the state where it has its principal place of business. *Wylie v. Red Bull N. Am., Inc.*, 627 Fed. Appx. 755, 757 (11th Cir. 2015). Next, the Court looks to the amount in controversy which must exceed the minimum of the $75,000 threshold established by 28 U.S.C. § 1332(a)(1). Finally, the Court must ensure that it has personal jurisdiction over a defendant. A federal court is "obligated to inquire about jurisdiction sua sponte whenever it may be lacking." *Jackson v. St. Jude Med. Neuromodulation Div.*, 62 F. Supp. 3d 1343, 1345 (M.D. Fla. 2014). A default judgment against a defendant that is not subject to personal jurisdiction is void. *Organizacion Miss Am. Latina, Inc. v. Urquidi*, 712 F. App'x 945, 949 (11th Cir. 2017).

The parties must be citizens of different states. Here, Hovey is a citizen domiciled in Florida. Doc. 45 at ¶ 11. Tracpatch is a corporation incorporated in California and has its principal place of business in California. Doc. 45 ¶ 12. Additionally, Tracpatch admitted it is a California corporation in its answer to the original complaint. Doc. 10 ¶ 12. As such, there is complete diversity of citizenship between Hovey and Tracpatch satisfying the first element of the statute. 28 U.S.C. § 1332(a)(1).

Next, the Court looks to the amount in controversy. "[The] jurisdictional amount requirement must be strictly construed, and the Court should look to the amount stated on the face of the complaint to determine whether this aspect of diversity jurisdiction has been established." *Music v. Invs. Choice Advisors*, LLC, No. 12-21424-CIV, 2013 WL 12382970, at *1 (S.D. Fla. Jan. 28, 2013), *report and recommendation adopted sub nom. Music v. Harrison*, No. 12-21424-CIV, 2013 WL 12382969 (S.D. Fla. Feb. 15, 2013). The jurisdictional amount is satisfied here because the complaint alleges that the amount at issue exceeds the jurisdictional threshold. Doc. 45 ¶ 25 (stating the court has subject matter jurisdiction as there is complete diversity of the parties and the amount in controversy exceeds the sum of $75,000). Establishing that the amount in controversy exceeds the jurisdictional threshold requires more than a general allegation that damages exceed $75,000. *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1342 (11th Cir. 2018).

Instead, where damages are indeterminate, "the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the

claim on which it is basing jurisdiction meets the jurisdictional minimum." *See Federated Mut. Ins. Co. v. McKinnon Motors*, 329 F.3d 805, 807 (11th Cir. 2003). In the motion for default judgment, Hovey requests damages of more than $3,900,000, including past medical expenses of more than $400,000 future medical expenses of $500,000, and $3,000,000 for non-economic damages. Doc. 89 at 19. Hovey includes his medical bills in the motion for default judgment. Doc. 89-2. In supplemental briefing on damages, Hovey requests more than $3,400,000. Doc. 98. Based on the information apparent from the complaint and the motion for default judgment, the Court is satisfied that the amount in controversy exceeds the minimum of the $75,000 threshold established by 28 U.S.C. § 1332(a)(1), and therefore the Court has original subject-matter jurisdiction.

Finally, the Court must also ensure it has personal jurisdiction over a defendant. The Court has personal jurisdiction over Tracpatch because it appeared at the start of the case and filed an answer to the complaint. Doc. 10. Significantly, Tracpatch did not raise an issue regarding the Court's personal jurisdiction at that time.

B. Tracpatch was properly served

The Court must also determine if defendant Tracpatch was properly served with notice of this action. A court cannot render judgment where service of process is inadequate. *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003). A party's failure to plead or otherwise defend a case may cause a default judgment only if the party has been properly served. *Hines v. Regions Bank*, 782 F. App'x 853, 854 (11th Cir. 2019).

A process server's sworn return of service is prima facie evidence of properly effected service. *Udoinyion v. The Guardian Sec.*, 440 F. App'x 731, 735 (11th Cir. 2011) (per curiam). "An unsworn written declaration may be used as evidence if the writer includes and signs a statement such as, 'I declare under penalty of perjury that the foregoing is true and correct.'" *Id.* (citing 28 U.S.C. § 1746). In the absence of other information calling into question the validity of service, a sworn or notarized return of service is deemed adequate evidence of properly executed service. *Id.* Plaintiff initially filed a return of service of defendant in which a process server declared under penalty of perjury that she served defendant at his personal address. Doc. 6. Tracpatch appeared in the case through counsel, further supporting adequate service, doc. 7, and then answered the complaint, doc. 10, without alleging that service was improper. For these reasons, I find that defendant was properly served in this case.

C. Sufficiency of the Claims against Tracpatch

As the Court has concluded that it has jurisdiction over the action and that Tracpatch was properly served, the Court next considers the default motion itself. A Fed. R. Civ. P. 55(a) entry of default does not itself warrant a final default judgment. *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[4] Hovey asserts four claims arising from his use of the CHS sold and designed by Tracpatch in Florida.

---

[4] In *Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit made prior to the close of business on September 30, 1981.

For the Court to grant Hovey's motion, there must be sufficient basis in the pleadings to support a judgment in his favor. *Nishimatsu Const. Co., Ltd.*, 515 F.2d at 1206. The defaulting party "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* The Eleventh Circuit interprets the "sufficient basis" standard as "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (citing *Chudasama*, 123 F.3d at 1270 n. 41). As such, the Court accepts all factual allegations in the operative complaint as true and analyzes whether it contains a short and plain statement setting forth facially plausible claims. *Id.; See also* Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545-56 (2007).

The Court first looks to what law governs this dispute before it can determine if Hovey has sufficiently stated a claim upon which relief can be granted. A federal court sitting in diversity must apply the choice of law of the state in which it sits. *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998); and *see Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) (a federal court sitting in diversity must apply state substantive law and federal procedural law). As the Court sits in diversity jurisdiction, as established above, it must apply Florida's substantive law in addressing whether these claims are properly pleaded. *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011)

*1. Count I-Strict Liability for Failure to Warn*

The Court first considers Hovey's strict liability for failure-to-warn claim. Doc. 45 ¶¶ 78-88. Under Florida law, to plead a claim for strict liability based on failure to

warn plaintiff must allege that (1) the warnings accompanying the item were inadequate; (2) the inadequacy of the warnings proximately caused the injury; and (3) plaintiff in fact suffered an injury by using the product. *Dimieri v. Medicis Pharm. Corp.*, No. 14-17638, 2014 WL 3417364, at *4 (M.D. Fla. July 14, 2014). Plaintiff must also plead the content of the warning label or otherwise describe the way the warning was inadequate. *Wright v. Howmedica Osteonics Corp.*, 741 F. App'x 624, 626 (11th Cir. 2018).

Florida has adopted the learned intermediary doctrine. *Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 608 (11th Cir. 2008) (applying the learned intermediary doctrine when reviewing sufficiency of allegations on motion to dismiss). Consequently, "the duty to warn flows from the [medical product] manufacturer to the physician, not the ultimate consumer[,]" *see id.*, and plaintiff must "assert [the] warnings given to his physician were inadequate." *Dimieri*, 2014 WL 3417364, at *4; *see also Small v. Amgen, Inc.*, 2 F. Supp. 3d 1292, 1297 (M.D. Fla. Mar. 6, 2014) ("[T]he duty to warn is directed to physicians rather than patients under the 'learned intermediary' doctrine."). Thus, if the manufacturer "can show that it provided the medical community with an adequate warning of the risks associated with the product[,]" it will not be held liable. *Hosler v. Alcon Lab., Inc.*, No. 12-60025, 2012 WL 4792983, at *9 (S.D. Fla. Oct. 9, 2012). This is so because "the prescribing physician, act[s] as a 'learned intermediary' between the manufacturer and the consumer, [and] weighs the potential benefits against the dangers in deciding whether to recommend the drug to meet the patient's needs." *Pierre v. Intuitive Surgical, Inc.*, No.

18-60095, 2020 WL 1240420, at *12 (S.D. Fla. Mar. 6, 2020) (citation omitted); *see also Wolicki-Gables v. Arrow International, Inc.*, 641 F. Supp. 2d 1270, 1286 (M.D. Fla. 2009), *aff'd*, 634 F.3d 1296 (11th Cir. 2011) ("It is the physician's duty to inform himself of the qualities and characteristics of the products which he prescribes for his patients, and to exercise an independent judgment, taking into account his knowledge of the patient as well as the product.").

Here, Hovey alleges no facts regarding the warning label or otherwise describes the ways the warning was inadequate. Plaintiff simply states that the "labeling was insufficient to warn users of the hazardous conditions posed" but does not state the content of the warning label or even what, if any, warning his doctor gave him before the surgery. Doc. 45 ¶ 84. Even taking the allegations as plead as true, the Court has no information regarding what warning was provided and the adequacy of that warning. Therefore, plaintiff's failure to warn claim is not plead adequately to allow for a default against Tracpatch.

*2. Count 2-Strict Liability for Design and Manufacturing Defect*

The Supreme Court of Florida has adopted strict liability for manufacturers and sellers whose products reach a consumer in an unreasonably dangerous condition and thereafter cause injury. *Bailey*, 288 F. App'x at 606–07 (citing *West v. Caterpillar Tractor Co.*, 336 So. 2d 80 (Fla. 1976)). The Eleventh Circuit "regularly allow[s] plaintiffs to plead multiple theories [of liability] (e.g., both design and manufacturing defect), providing that they adequately allege the defect." *Kilmer v. Howmedica Osteonics Corp.*, No. 14-45634, 2015 WL 5915950, at *4 (M.D. Fla. Oct. 8, 2015) (citation omitted).

Thus, in this Circuit the method by which to state a claim for manufacturing defect and design defect are analyzed similarly. *See Bailey*, 288 F. App'x at 605-06 ("we are not convinced that Florida law applies a rigid distinction among the various theories of recovery available to plaintiffs under strict products liability such that a plaintiff would be required to expressly plead 'design defect' versus 'manufacturing defect' at the complaint stage.").

To state a claim in Florida for strict products liability based on a design or manufacturing defect, a plaintiff must plead three elements: (1) a relationship between the defendant and the product; (2) a defect which caused the product to be unreasonably dangerous; (3) causation between the defect and the harm suffered by the user. *Dimieri*, 2014 WL 3417364, at *4 (internal quotations omitted) (*quoting Bailey*, 288 F. App'x at 607 (holding similar elements for manufacturing defect claim)).

Plaintiff satisfies each of the three elements. First, plaintiff has sufficiently alleged a relationship between Tracpatch and the CHS. Hovey alleges that Tracpatch, was originally Hayes Medical and then became Consensus Orthopedics Inc. before being sold and becoming Tracpatch Health, Inc. Doc. 45 ¶¶ 16-18. Throughout these name changes, the CHS was developed, manufactured, and marketed. *Id.* ¶ 24, 79, 90, 97. The plaintiff alleges that Tracpatch developed and manufactured the CHS that was used for Hovey's first hip replacement. *Id.* ¶¶ 16-19, 30-31, 44-47. Hovey does not overtly describe when and how the CHS was developed by Tracpatch, or its predecessors, but taking the allegations as a whole and accepting them as true for default purposes, Hovey has sufficiently alleged that Tracpatch has a relationship to

the CHS at issue. Second, Hovey adequately alleges that there was a defect that caused the product to be unreasonably dangerous: Hovey alleges, and by default Tracpatch admits, that Tracpatch knew or should have known that the "poor design and material choices [of the CHS] would lead to micro-motion, fretting, corrosion, and ultimately the total failure of the implant." *Id.* ¶ 44. Finally, causation exists between the defect and the harm suffered by Hovey. The CHS implanted into Hovey's right hip led to a "catastrophic failure" by causing "severe and unusual fretting, corrosion, and toxic metal release". *Id.* ¶ 51. Ultimately, the CHS was removed in December 2021 because it had "fallen apart in [Hovey's] body, severing any skeletal connection between his hip and his leg." *Id.* ¶¶ 57, 61. But for the CHS failing, Hovey would not have had to have it removed. In sum, plaintiff has adequately alleged a claim for strict liability design and manufacturing defect.

*3. Count 3-Negligence*

Hovey alleges Tracpatch breached its duty of care by failing to design and manufacture the CHS to avoid unreasonable risk of harm; failing to adequately evaluate the safety and efficacy of the CHS; and failing to share the results of its evaluations of the CHS. *Id.* ¶¶ 96-103. The Court considers plaintiff's negligence claim in what it sees as two claims: negligent manufacturing and negligent testing.

To state a claim for negligence under Florida law, plaintiff must allege (1) a duty or obligation recognized by the law requiring the defendant to protect others from unreasonable risks; (2) a breach of that duty; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damages. *Kilmer,*

2015 WL 5915950, at *3 (quoting *Dimieri*, 2014 WL 3417364, at *8). Whether a duty of care exists is a threshold question of law. *Id.* (citing *Brandt v. Depuy Orthopaedics, Inc.*, 2010 WL 2612037, at *3 (M.D. Fla. June 28, 2010)). Duty of care focuses on whether the conduct foreseeably created a broader "zone of risk" that poses a general threat of harm to others. *Id.* Where, like here, a product is allegedly defective and that defect creates a dangerous condition, then a zone of risk has been created for all parties that may come in contact with the product. *Id.* Therefore, a manufacturer has a duty to use reasonable care to design a product that is reasonably safe for its intended use. *Id.*

Here, plaintiff alleges Tracpatch breached its duty of care by failing to design and manufacture the CHS to avoid unreasonable risk of harm. As a hip replacement patient, Hovey was an intended user of Tracpatch's CHS and therefore should have been afforded the proper duty of care. Based on the facts as alleged in the complaint, such a duty was breached and caused damages when the CHS eroded in plaintiff's body to a degree that it had to be fully removed. But, similar to Hovey's strict liability for design and manufacturing defect claim, more facts could have been alleged to support this claim, specifically regarding the duty of care that Tracpatch poses and how they increased the "zone of risk" but as pled, the Court likely possesses sufficient facts to grant default judgment in favor of Hovey on a negligent manufacturing claim.

However, plaintiff conflates his negligence claims into a slew of other claims, which the Court has had to dissect on its own accord to sufficiently analyze. As such, the Court next looks to the negligence claim regarding the sufficiency of testing done by Tracpatch. Conversely, the allegation of inadequate testing cannot be supported.

"Under Florida law, a manufacturer's duty to test is a subpart of its duty to design a product with reasonable care and, therefore, is subsumed in the plaintiff's claims for defective design and failure to warn." *Tsavaris v. Pfizer*, No. 1:15-cv-21826-KMM, 2016 WL 375008, at *4 (S.D. Fla. Feb. 1, 2016); *Small*, 2 F. Supp. 3d at 1299 ("[P]laintiffs' claim for negligence cannot rest on defendants' alleged failure to test or inspect."). Accordingly, plaintiff cannot support his negligence claim based on inadequate testing, and default on this claim would have to be denied

*4. Count 4-Breach of Warranty*

Finally, plaintiff alleges that Tracpatch expressly and impliedly warranted the CHS. Doc. 45 ¶ 104. The Court first evaluates whether these claims are properly pled under Florida law. *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1327-28 (11th. Cir. 2017). A claim for breach of implied warranty under Florida law requires privity of contract. *Kramer v. Piper Aircraft Corporation*, 520 So. 2d 37, 39–40 (Fla. 1988); s*ee also Amoroso v. Samuel Friedland Fam. Enters.*, 604 So. 2d 827, 833 (Fla. 4th DCA 1992), *approved*, 630 So. 2d 1067 (Fla. 1994). A claim of strict liability "supplants" non-privity implied warranty claims, while leaving intact contract-based implied warranty claims where privity is shown. *Kramer*, 520 So. 2d at 39 (quotation omitted). Privity of contract is "[t]he relationship between the parties to a contract, allowing them to sue each other but preventing a third party from doing so." PRIVITY, Black's Law Dictionary (12th ed. 2024). Thus, the Supreme Court of Florida delineated two avenues for which a breach of implied warranty claim may be brought: (1) a strict liability claim where no privity is required, or (2) a breach of implied warranty claim

where privity is required. *Amoroso*, 604 So. 2d at 833 (explaining that "in [*Kramer*] the [Florida] [S]upreme [C]ourt held that a no-privity claim for breach of implied warranty was abolished by the adoption of strict liability in Florida" and therefore privity is a requirement for a breach of implied warranty claim); *Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1225 (M.D. Fla. 2009) ("To sustain a claim for breach of implied warranty under Florida law, the plaintiff must demonstrate that he is in privity with the defendant." (citing *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (citing *Kramer*, 520 So. 2d at 39))).

Florida law also requires privity for breach of express warranty claims. *Kaiser v. Depuy Spine, Inc.*, 944 F. Supp. 2d 1187, 1193 (M.D. Fla. 2013) ("It is well established law in Florida that warranty-based claims, including breach of express warranty, require privity of contract between the parties."); *Intergraph Corp. v. Stearman*, 555 So. 2d 1282, 1283 (Fla. 2d DCA 1990) ("Privity is required in order to recover damages from the seller of a product for breach of express or implied warranties."); *Weiss v. Johansen*, 898 So. 2d 1009, 1012 (Fla. 4th DCA 2005) ("[I]n order to recover for the breach of a warranty either express or implied, the plaintiff must be in privity of contract with the defendant." (citations omitted)).

Here, Hovey has not pled any allegations regarding privity. Hovey does not allege that he purchased the CHS directly from Tracpatch, or that he established a contractual relationship with Tracpatch at all. In his breach of warranty claim, Hovey focuses on what Tracpatch failed to do but does not adequately allege the required relationship between him and Tracpatch that is necessary for a default here. Doc. 45 ¶

104-111. As outlined above, privity is required for breach of warranty claims under Florida law. The Court does not know who the plaintiff purchased the CHS from or if, or what, warranties were expressed directly to plaintiff. Plaintiff simply states that he was implanted with the CHS by his doctor. *Id.* ¶ 47. Given the lack of allegations in Hovey's complaint, privity has not been established for either warranty-based claim. *Kaiser*, 944 F. Supp. 2d at 1193 (dismissing a breach of warranty claim "where [the] plaintiff did not purchase the product from the defendant" and thus could not establish privity); *Jackmack v. Bos. Sci. Corp.*, No. 2:20-cv-692-SPC-NPM, 2021 WL 1020981, at *2 (M.D. Fla. Mar. 17, 2021) (dismissing a breach of express warranty claim for lack of privity where plaintiff did not "allege that [the plaintiff] bought the medical device directly from [the defendant]"). Absent allegations of privity between himself and Tracpatch, Hovey fails to state plausible breach of implied warranty and breach of express warranty claims under Florida law, and therefore these allegations are due to be denied.

**Conclusion**

For all the reasons stated above, the plaintiff would likely succeed on his motion for default judgment as to Strict Liability Design and Manufacturing Defects (Count 2), but his motion would be denied as to Strict Liability Failure to Warn (Count 1), Breach of Warranty (Count 4), and plaintiff's Negligence (Count 3) claim as to negligent testing. Partial judgments, however, are not permitted because any judgment would not be final and appealable. *Lloyd Noland Found., v. Tenet Health Care Corp.*, 483 F.3d 773, 777 (11th Cir. 2007)("[A]order adjudicating fewer than all the claims in a

suit, or adjudicating the rights and liabilities of fewer than all the parties, is not a final judgment from which an appeal may be taken."); *see also Peden v. Stephens*, 50 F.4th 972, 977 (11th Cir. 2022) (explaining that a court can direct entry of a final judgment to fewer than all claims only after determining "that there is no just reason for delay.")(citation modified).

Thus, plaintiff shall be given the opportunity to cure the deficiencies outlined above (either by amending the complaint or dismissing claims) or to notify the Court of how he intends to proceed. In essence, plaintiff has three options: First, he can choose to stand on his amended complaint, doc. 45, as written in relation to Tracpatch, and refile his motion for default judgment; the Court would then issue a report and recommendation in accordance with the principles outlined above. Second, he can amend his complaint to cure the deficiencies identified above, re-serve Tracpatch in accordance with Fed. R. Civ. P. 4, and then again move for default. Or third, plaintiff can voluntarily dismiss counts 1, 3, and 4 and move for default on the remaining claim.[5]

---

[5] Regarding damages, a court may award them "as long as the record contains evidence allowing the court to ascertain damages from 'mathematical calculations' and 'detailed affidavits.'" *Holtz v. Bagel Mkt., Inc.*, No. 12-62040-CIV-ROSENBAUM, 2013 WL 12141515, at *2 (S.D. Fla. Apr. 29, 2013) (*quoting Adolph*, 777 F.2d at 1543–44). Although plaintiff has provided medical bills and affidavits, the damages sought in this case are not clearly established by the record. Thus, upon a renewed request for default judgment, the Court will hold a hearing to determine damages, if appropriate.

It is **ordered**:

1. Plaintiff's Motion for Final Default Judgment as to Tracpatch Health, Inc., doc. 89, is **denied without prejudice.**

2. **On or before August 20, 2025**, plaintiff shall notify the Court of how he intends to proceed and move for default accordingly. If plaintiff amends his complaint, it will need to be re-served on Tracpatch in accordance with Fed. R. Civ. P. 4 and proof of service should be filed on the docket once completed.

**Ordered** in Jacksonville, Florida, on August 6, 2025.

LAURA LOTHMAN LAMBERT
United States Magistrate Judge

c:
Tamara Joi Spires, Esquire
Jordan Scott Cohen, Esquire